**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

DAWN DOVER,                                    )        Case No. 2:12-cv-00694-CB-MPK
Individually, and on Behalf of                 )
All Others Similarly Situated,                 )        *Electronically Filed*
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )
                                               )
SHOE SHOW, INC.,                               )
                                               )
                    Defendant.                 )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dawn Dover ("Plaintiff") respectfully requests that this Court grant final approval under Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") to the proposed Class Action Settlement with Shoe Show, Inc. ("Shoe Show" or "Defendant") embodied in the Settlement Agreement[1] that this Court preliminarily approved in its Order dated October 25, 2013 ("Preliminary Approval Order").  [Dkt. # 48.]

As set forth below, the settlement is fair, adequate and reasonable and satisfies all applicable requirements for final approval.

Pursuant to the Court's Preliminary Approval Order, a copy of the Notice of Class Action Settlement was published by the *USA Today* on December 4, 2013.[2]  Furthermore, Notice was published on Defendant's website at **https://www.shoeshow.com/class** beginning on December

---

[1] The Settlement Agreement [Dkt. # 45-1] was attached as Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement [Dkt. # 45] ("Preliminary Approval Motion").

[2] Attached to the Unopposed Motion for Final Approval of Class Action Settlement ("Final Approval Motion") as Exhibit 1 is the Declaration of Kimberly K. Ness, Senior Project Administrator for Settlement Administrator Rust Consulting, Inc., which outlines more fully the manner in which Notice was published ("Ness Declaration").

9, 2013.[3]  Notice was also published in a prominent location at Defendant's retail stores beginning on December 9, 2013.[4]

In addition, the Long-Form Notice of Class Action Settlement ("Long-Form Notice"), along with the Complaint, the Preliminary Approval Order, the Proposed Final Approval Order the Settlement Agreement, the Publication Notice, the Shoe Show In-Store Notice, the Shoe Show Website Notice, the Claim Form, and answers to frequently asked questions agreed upon by the Parties, was published on a dedicated website created for the purpose of hosting the Long-Form Notice, which had the following internet domain name:  **www.shoeshowsettlement.com**.[5] The last day to file objections to the Settlement was February 11, 2014.  This was also the last day to request exclusion from the Class.  Through February 22, 2014, seven customers have requested Tier One settlement vouchers.[6]  No objections have been lodged against the Settlement, and no class member has requested exclusion from the Settlement Class.[7]  On the record before the Court, the Settlement should be given final approval.

## I.     BACKGROUND OF THE LITIGATION

Class Representative Dawn Dover filed the instant action on May 24, 2012.  On behalf of herself and other putative class members, Plaintiff alleges that Defendant Shoe Show, Inc. ("Defendant" or "Shoe Show") violated the Fair and Accurate Credit Transaction Act, 15 U.S.C. §§ 1681 *et seq.* ("FACTA").  Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1681(g)(1) which provides:

---

[3] *See* Declaration of J.W. Manning, Senior Executive for Shoe Show, Inc., at ¶ 7, a true and correct copy of which is attached to the Final Approval Motion as Exhibit 2 ("Manning Declaration").
[4] *See* Manning Declaration at ¶ 4.
[5] *See* Ness Declaration at ¶ 5.
[6] *See* Ness Declaration at ¶ 9.
[7] *See* Ness Declaration at ¶ 10; *see also* Declaration of Gary F. Lynch at ¶ 8, a true and correct copy of which is attached to the contemporaneously filed Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Plaintiff Incentive Award as Exhibit 1 ("Lynch Declaration").

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

On August 24, 2012, the Parties filed a Stipulation Selecting ADR process, pursuant to which they agreed to mediate the claims in dispute before attorney Arthur H. Stroyd. An all-day mediation with Mr. Stroyd was conducted on September 27, 2012. The case was not resolved at that time. Settlement discussions continued, however, and a subsequent full day mediation was conducted on August 27, 2013.[8] The Parties agreed to the basic terms of a Class Settlement at that time, and the Parties ultimately executed a Stipulation and Agreement of Class Action Settlement ("Settlement Agreement") on or about October 21, 2013.

Pursuant to this agreement, the Parties have agreed to certification, for settlement purposes only, of the following Class:

> All Consumers to whom Shoe Show provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring anytime from June 3, 2008 through August 27, 2013 on which Shoe Show printed (1) more than the last five digits of the person credit card or debit card number, and/or, (2) the expiration date of the person's credit card or debit card number. Excluded from the class is any Consumer who has suffered identity theft as a result of any Shoe Show Violation.

Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement on or about October 23, 2013. [Dkt. # 45.] By Order dated October 25, 2013, this Honorable Court granted preliminary approval of the Parties' proposed class action settlement.

---

[8] Between September 27, 2012 and August 27, 2013, the Parties litigated Defendant's Motion to Dismiss, in which Defendant argued that Plaintiff's allegations concerning Defendant's willful noncompliance with the requirements of FACTA were legally insufficient. On or about March 19, 2013, Magistrate Judge Maureen P. Kelly issued a Report and Recommendation denying Defendant's Motion. Defendant filed its Objections to the Report and Recommendation on or about April 5, 2013, and by Order dated April 23, 2013, District Judge Cathy Bissoon adopted Magistrate Judge Kelly's Report and Recommendation as the Opinion of the District Court. Defendant later filed a Motion for Certification for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b), which was denied by the Court on or about May 7, 2013. Thereafter, Defendant answered Plaintiff's Complaint. The Parties then engaged in written discovery.

## II.   THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

Settlement Class Members may submit a claim for a voucher redeemable for $35 of merchandise at any Shoe Show retail location ("Tier One Voucher").[9]  To be eligible to receive a Tier One Voucher, a Settlement Class Member must submit a claim form, including a non-compliant receipt, to the Settlement Administrator.  Settlement class members have until 90 days after the Effective Date to submit a claim for a Tier One Voucher.  The Settlement Administrator shall determine whether the Settlement Class Member has submitted a potentially valid claim. Within 180 days after the Effective Date, the Settlement Administrator will prepare and mail one Tier One Voucher to each Tier One Voucher Recipient to the address provided on that individual's claim form.

Thereafter, Defendant will prepare and distribute vouchers redeemable for $7 of merchandise at any Shoe Show Retail Location ("Tier Two Vouchers").[10]  Tier Two Vouchers will be distributed at specific Shoe Show retail stores on a first-come, first-served basis to consumers making a purchase using a credit card or debit card.  The total aggregate number of Tier One Vouchers and Tier Two Vouchers distributed by Defendant is not to exceed 375,000.

---

[9] The Parties have agreed that Tier One Vouchers (i) shall be fully transferrable, (ii) shall not be subject to an expiration date, (iii) shall be limited to one per customer, (iv) may be used on only one item and may not be used to purchase multiple items, (v) may only be redeemed in a Shoe Show Retail Location, (vi) may not be redeemed, in whole or in part, for cash, (vii) may not be used to obtain a refund or discount if the entire face amount of the voucher is not used in a single transaction, (viii) may not be applied to a prior purchase, (ix) may not be applied to the purchase of a gift card, and (x) subject to the foregoing provisions, shall not require any minimum purchase amount to redeem.  Settlement Agreement, at 11 ¶ 49. [Dkt. # 45-1.]

[10] The Parties have agreed that Tier Two Vouchers (i) shall be fully transferrable, (ii) shall not be subject to an expiration date, (iii) shall be limited to one per customer, (iv) may be used on only one item and may not be used to purchase multiple items, (v) maybe only be redeemed in a Shoe Show Retail Location, (vi) may not be redeemed, in whole or in part, for cash, and (vii) may not be used to obtain a refund or discount if the entire face amount of the voucher is not used in a single transaction, (viii) may not be applied to a prior purchase, (ix) may not be applied to the purchase of a gift card, (x) may not be redeemed until after two full days have elapsed since the Distribution Date, and (ix) subject to the foregoing provisions, shall not require any minimum purchase amount to redeem. Settlement Agreement, at 11 ¶ 51. [Dkt. # 45-1.]

Defendant has agreed to pay the cost of notice and claims administration.  Further, Defendant has agreed to pay Class Counsels' attorneys' fees and allowable litigation costs and expenses in an amount not to exceed $500,000.00, subject to Court approval.  In addition, Defendant has agreed to pay Plaintiff a Settlement Class Representative Award in an amount not to exceed $2,500.00, subject to Court approval.

III.    **MULTIPLE FEDERAL COURTS WITHIN THE THIRD CIRCUIT HAVE APPROVED ANALOGOUS PROPOSED SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF FACTA'S TRUNCATION REQUIREMENTS**

In recent years, judges sitting in the Third Circuit have given final approval and entered final judgment in connection with the following class-based settlements of FACTA truncation actions: *Klingensmith v. Max & Erma's Restaurants*, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) (Lenihan, J.);  *Sinatra v. Coventry Restaurant Systems, Inc d/b/a Hyde Park Steak House.*, C.A. No. 07-445 (W.D. Pa.) (Schwab, J.); *Ehrheart v. Pro Nebraska, Inc. d/b/a Pro Image*, 07-447 (W.D. Pa.) (Lenihan, J.); *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center*, C.A. No. 07-321 (W.D. Pa.) (Schwab, J.).  All of these cases were settled on terms analogous to those in the proposed settlement that is now before this Court.

IV.    **CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED**

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has confirmed not only the viability, but the desirability, of such settlement classes. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).  So, too, have the federal courts of appeals. *See, e.g.*, *In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998) ("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  In the Third Circuit, there is a preference for class certification: "The interests of justice require that in a doubtful case . . . any error, if there is

to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (citations omitted), *cert. denied*, 424 U.S. 946 (1985); *see also Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D. Pa. 1994) (Ambrose, J.) (same).

 In cases such as this, involving issues of consumer protection, courts have consistently held that the use of the class action mechanism is "desirable and should be encouraged." *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980); *Gordon v. Boden*, 586 N.E.2d 461, 467 (Ill. App. Ct. 1991) ("[I]n a large and impersonal society, class actions are often the last bastion of consumer protection."), *cert. denied*, 506 U.S. 907 (1992).

### A. The Rule 23(a) Prerequisites Are Satisfied

 The four prerequisites of Rule 23(a) are that:  (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1983); *Meyer v. CUNA Mutual Group*, 2006 WL 197122, at *15 (W.D. Pa. Jan. 25, 2006) (Conti, J.);  *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 134 (W.D. Pa. 1993); *Steiner v. Equimark Corp.,* 96 F.R.D. 603, 608 (W.D. Pa. 1983).

### 1. Numerosity

 For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To meet this requirement, the class representative(s) need only show that "common sense" suggests that it would be difficult or inconvenient to join all the members of the class. *In re Bell Atlantic Corp. Sec. Litig.*, [1995-96 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,007, at 93,920 (E.D. Pa. Dec. 11, 1995); H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992) ("In light of prevailing

precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."); *see also Welch*, 146 F.R.D. at 135 (stating that the Third Circuit has generally held that numerosity requirement is met if proposed class exceeds 100 members); *In re Phar-Mor, Inc.*, 875 F. Supp. 277, 279 (W.D. Pa. 1994) (finding numerosity "presumptively established" by the existence of more than 1200 members in proposed class). Geographical dispersion of the class members is appropriately considered. *Eisenberg*, 766 F.2d at 785-86.

Here, the Class contains over one million members given that there were approximately 2.5 million transactions at issue.  Numerosity therefore is readily apparent.

### 2.    Commonality

To maintain a class action, there must be "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2)(emphasis added). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Carey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Prudential II,* 148 F.3d at 310; *Weiss*, 745 F.2d at 808-09.  Because this requirement will be satisfied by the presence of a single common issue, it is "easily met." *Prudential II*, 148 F.3d at 310; *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992).

Plaintiff's Complaint specifically lists the common issues implicated by her claims. *See* Complaint at ¶ 57. Courts in the Third Circuit, including this Court, have routinely found such allegations to be "common" for purposes of class certification. *See, e.g., In re Chambers Securities Litigation,* 912 F.Supp. 822, 833 (W.D. Pa. 1995); *Hoffman Electric, Inc. v. Emerson Electric Co.*, 754 F.Supp. 1070, 1075 (W.D. Pa. 1991).

Thus the numerous common questions alleged in Plaintiff's Complaint easily satisfy the commonality requirement of Rule 23(a)(2). Other courts sitting within this district have previously confirmed that commonality exists in the context of the settlement of similar claims under FACTA.  *See, e.g., Klingensmith v. Max & Erma's Restaurants, Inc., supra.*

### 3.    Typicality

Rule 23(a) requires that the claims of the representative party be "typical" of those of the class. Typical, however, does not mean identical, and factual homogeneity between the representative plaintiff and all Class Members is not required. *Prudential II,* 148 F.3d at 57; *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 834 (W.D. Pa. 1995) ("typical" does not mean "identical"); *Safran v. United Steelworkers of America*, 132 F.R.D. 397, 402 (W.D. Pa. 1989).

Here, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Accordingly, the named Plaintiff's claims are typical of those of the Class Members. *Meyer,* 2006 WL 197122, at **17-19; *see also Klingensmith v. Max & Erma's Restaurants, Inc., supra.*

### 4.    Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties … fairly and adequately protect the interests of the class." The Third Circuit has confirmed that "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth*, 980 F.2d at 923 (quoting *Weiss*, 745 F.2d at 811; internal quotation marks omitted); *see also Meyer*, 2006 WL 197122 at * 19; *Wetzel*, 508 F.2d at 247; *Chambers*, 912 F. Supp. at 834-35.

Here, there are no conflicts of interest or other antagonisms between Plaintiff on the one hand and Class Members on the other. All were consumers with the mutual incentive to establish

8

the alleged violation of FACTA.  All class members were impacted by the practices at issue in an identical manner.

In addition, Class Counsel have provided fair and vigorous representation for the Class. Class Counsel have substantial experience in similar consumer class action litigations and have regularly been deemed to be adequate class counsel.[11]

Finally, as a Court in the Western District stated in *In re Chambers Development Securities Litigation*, the "proof is in the pudding." 912 F. Supp. at 835.  The Settlement in this case is wholly warranted and appropriate, which becomes more manifest in the discussion of the *Girsh* factors below. Thus, the adequacy requirement of Rule 23(a)(4) is readily satisfied.

This Court has confirmed that adequacy exists in the context of similar claims under FACTA, when considering a similar proposed settlement wherein Plaintiff was represented by Class Counsel in this case. *See Klingensmith v. Max & Erma's Restaurants, Inc., supra.*

**B.    The Requirements Of Rule 23(b) Are Satisfied**

Rule 23(b) provides in pertinent part:

> (b)    **Class Actions Maintainable.**    An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
> *****
>
> (3)    the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are satisfied here for settlement purposes.

---

[11] *See* Lynch Declaration.

1.    **Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class**

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594.  The Supreme Court then noted that the predominance requirement is easily met in cases, such as this one, alleging a uniform violation of a consumer protection statute. *Id.* at 2250.  The Third Circuit has indicated that claims alleging the violation of a consumer protection statute by way of standardized documents are appropriate for nationwide class action treatment. *See, e.g., Prudential II,* 148 F.3d 283.  This case is no exception. *See*, *Meyer,* 2006 WL 197122 at *21; *Lerch v. Citizens First Bancorp, Inc.,* 144 F.R.D. 247, 252 (D.N.J. 1992); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Blackie v. Barrack,* 542 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues.  *In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

Similarly, the damage issues in this case are especially well suited for class-wide settlement because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's willful noncompliance with the truncation requirements of FACTA.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also Prudential I*, 962 F.Supp. at 516.

Courts within this district have previously confirmed that predominance exists in the context of the settlement of similar claims under FACTA. *See Klingensmith v. Max & Erma's Restaurants, Inc., supra.*

> **2.   A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes**

It is well-accepted that the class-action mechanism generally provides the superior approach to handling multi-state consumer protection claims. *See, e.g., Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981). Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D)  the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes, and courts within this district have previously determined that superiority exists in the context the settlement of similar claims under FACTA.  *See Klingensmith v. Max & Erma's Restaurants, Inc., supra.*

> **a.   *Most Class Members Have An Insufficient Interest To Justify Individual Lawsuits***

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery. Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful – such as identity theft – and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of credit and debit card users presents the paradigmatic case for certification of a class action settlement. The class action mechanism for settlement is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155 (1982).  The claims at issue here are such that class relief is the only realistic alternative to no relief at all, for the vast majority of Class Members. *Prudential I*, 962 F.Supp. at 522-23.  This factor thus plainly supports certification for settlement purposes.

> **b.**      ***The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class***

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

c.    *This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute*

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Shutts*, 472 U.S. at 811-812

d.    *Manageability*

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *Prudential II,* 148 F.3d at 316 n. 57.

## V.    THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A.    Final Approval of the Settlement Is Within the Sound Discretion of the Court and Is Favored by Strong Judicial Policy

In addition to determining whether the proposed settlement class satisfies the requirements of Fed. R. Civ. P. 23(b)(3), the Court must separately conclude that the proposed settlement is "fair, reasonable and adequate." *Prudential II*, 148 F.3d at 316.  "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *Id.* (citation omitted). A number of well-settled factors guide the Court's Fairness review.

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1971); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971); *Weiss v. Mercedes-Benz of N. America, Inc.*, 899 F.Supp. 1297, 1300 (D.N.J.), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995), a strong judicial

policy favors resolution of litigation short of trial. *In re Warfarin Sodium Antitrust Litig.*, 391=
F.3d 516, 535 (3d Cir. 2004) ("The law favors settlement, particularly in class actions and other
complex cases where substantial judicial resources can be conserved by avoiding formal
litigation.") (citation omitted). When a settlement is reached on terms agreeable to all parties, it
is to be encouraged. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

A federal District Court within the Third Circuit has articulated the rationale for this
policy as follows:

> [W]hen parties negotiate a settlement they have far greater control
> of their destiny than when a matter is submitted to a jury.
> Moreover, the time and expense that precedes the taking of such a
> risk can be staggering. This is especially true in complex . . . .
> litigation.

*Weiss*, 899 F. Supp. at 1300-01.

The Settlement at issue here enjoys a presumption that it is fair and reasonable because it
is the product of arm's-length negotiations conducted by experienced counsel who are fully
familiar with all aspects of class action litigation with the assistance of a mediator. *In re
Warfarin*, 391 F.3d at 535 ("We have previously directed a district court to apply an initial
presumption of fairness when reviewing a proposed settlement where: (1) the negotiations
occurred at arm's length [and] (3) the proponents of the settlement are experienced in similar
litigation . . . ."); *see also Manual for Complex Litigation, Third* § 30.43 (1995).  Although a
court must independently evaluate a proposed settlement, the court should credit the judgment of
experienced counsel in doing so. Conversely, the reviewing court must avoid substituting its
image of an "ideal settlement" for the views of the "compromising parties," and must keep in
mind the fact that a settlement is, after all, "a compromise, a yielding of the highest hopes in
exchange for certainty and resolution." *Prudential I, 962 F. Supp. at 534.  As Judge Ziegler has
framed the issue: "The test is whether the settlement is adequate and reasonable, and not whether

14

a better settlement is conceivable." *In re Flat Glass Antitrust Litigation*, (W.D. Pa. Feb. 9, 2000),

Slip Op. at 6.10

> Another court has noted:

>> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

>> *****

>> Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties.  We may not delete, modify, or substitute certain provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must be given or withheld . . . .   In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*,

459 U.S. 1217 (1983); *see also Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa.

1995) ("Significant weight should be attributed `to the belief of experienced counsel that

settlement is in the best interest of the class'") (*citing Austin v. Pennsylvania Dep't of

Corrections*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)).

Here, Class Counsel are fully familiar with the facts and law applicable to this litigation

and are well acquainted with the prosecution of class actions, generally, and with class-based

consumer fraud claims, in particular. Before entering into the Settlement, Class Counsel took

into account, among other things, the nine factors that the Court of Appeals for the Third Circuit

has identified as being relevant to the determination of whether a class settlement is fair,

reasonable and adequate. The evaluation of those factors resulted in Class Counsels'

recommendation that the proposed settlement be accepted as fair, reasonable and adequate as is set forth below.

### B.   <u>The Settlement Is Fair, Reasonable And Adequate</u>

#### 1.   The *Girsh* Factors Support The Approval Of The Settlement

The Court of Appeals for the Third Circuit has adopted a set of nine factors to be considered in determining whether a proposed settlement is fair, reasonable and adequate: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; (9) the range of reasonableness of the settlement in light of all the attendant risks of the litigation. *Girsh,* 521 F.2d at 157; *Chambers*, 912 F. Supp. 822, 836-41.

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable and adequate and should be approved.

#### a.   *Continued Litigation Would Be Long, Complex And Expensive*

The Third Circuit and the Western District have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement. In *Flatglass*, *id.*, Judge Ziegler stated:

> [W]ithout approval of the proposed settlements, the parties must explore the existence and scope of the alleged conspiracy, damages, actions by defendants to conceal the alleged conspiracy, and whether the plaintiffs exercised due diligence in discovering defendants' conduct. Further, in light of the earlier skirmishes, we conclude that the Settling Defendants would have `ardently contested the action at every step, leading to a plethora of pretrial motions.' *GM Trucks*, 55 F.3d at 812.
>
> In contrast, the settlements make remedies immediately available to the class members, thereby avoiding the substantial delay and

expenses that would accompany the pursuit of this litigation against the Settling Defendants . . . .

We also note that continuation of the proceedings against the Settling Defendants would undoubtedly consume inordinate amounts of the court's time, as well as class counsel. A trial would involve a battle of experts, as evidenced by the sparring prior to class certification and would involve a large number of fact witnesses. Moreover, the likelihood of appeals following a trial on the merits by disappointed litigants would necessarily follow. *Accord*, *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 837 (W.D. Pa. 1995).

*****

Examining the magnitude of the settlement class `as well as the complexity of the issues raised, we conclude the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both parties[.]' *In re Prudential*, 148 F.3d at 318. The prospect of such an undertaking weighs in favor of settlement.

*Id.* at 7-9.

The FACTA class action claims at issue are, by definition, complex, and they implicate unsettled areas of applicable law. While Class Counsel would not have asserted the claims if they were not confident that they could make persuasive arguments in favor of both liability and class certification, they acknowledge that if the claims were fully litigated, Plaintiff would have to face considerable risks, particularly in the context of establishing that Defendant's violation of FACTA was "willful," which is a prerequisite to Plaintiff's ability to recover statutory damages.

The Settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of causing the truncation of personal consumer credit data on receipts provided to consumers at the point of sale. This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement. Standing alone, the

relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally.

Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *In re Chambers Development Securities Litigation,* 912 F. Supp. 822, 837 (W.D. Pa. 1995); *In re Flat Glass Antitrust Litigation*, Slip Op. at 8; *see also TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982). Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal process, as well as the substantial risks involved, a settlement at this time is beneficial to the Class. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D. Mass. 1987).

This factor thus plainly weighs in favor of approval of the proposed Settlement.

### b. *The Reaction Of The Class To The Settlement Has Been Favorable*

The Third Circuit and Western District have held that the response of the class to notice of a proposed settlement can be a significant factor under the *Girsh* paradigm: "In an effort to measure the reaction of the class to the settlement's terms, courts look to the number and tone of the objections." *In re Flatglass Antitrust Litigation*, Slip Op. at 9. "The reaction of the class is perhaps the most significant factor to be weighed in considering its [the settlement's] adequacy." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003). Here, after adequate notice consistent with the Court's directive in the Preliminary Approval Order, there has been no objection to the Settlement and no request for exclusion from the Settlement. This fact recommends final approval of the Settlement.

c.    *Plaintiff Is Able To Make An Informed Evaluation Of The Merits Of The Proposed Settlement*

The stage of the proceedings and the amount of investigation and/or discovery completed is another factor considered in determining the fairness, reasonableness and adequacy of the settlement. *In re Warfarin*, 391 F.3d at 537.  This factor "captures the degree of case development that class counsel have accomplished prior to the settlement." *Id.*  "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.*

In this litigation, Plaintiff did not need to pursue extensive additional formal discovery after receiving Defendant's written discovery responses to be in a position to evaluate the merit of the proposed Settlement.  In fact, it is well-settled that so-called formal discovery does not warrant talismanic significance. Courts evaluating the fairness and reasonableness of class settlements have routinely held that effective litigation that yields an expeditious and favorable result for the class should be encouraged. Courts in the Western District have encouraged class settlements prior to full blown discovery. Specifically, in *DiCicco v. American Eagle Outfitters, Inc.* Magistrate Judge Benson stated:

> [T]his case has been settled at a time when sufficient discovery has occurred to put the parties on firm notice of the likely strengths and weaknesses of their case, yet at a point where the bulk of discovery which would be necessary to proceed to trial has not been taken. In the court's view, this is precisely the time that settlement should be pursued by the parties.

*DiCicco v. American Eagle Outfitters, Inc.*, No. 95-1937, Slip. Op. at 4.13

The Third Circuit has commented on this factor as follows:

> The objectors are correct that the Settlement was reached early in the litigation, with discovery itself at an early stage.  However, the merits of the liability case against Cendant were fairly clear . . . . Given the foregoing, it is unclear what depositions and

> interrogatories (with the requisite motions to compel) would have
> added to the liability considerations . . . .
>
> *****
>
> Therefore, although this litigation was settled at an early stage,
> because of the nature of the case Lead Plaintiff had an excellent
> idea of the merits of its case against Cendant insofar as liability
> was concerned at the time of settlement . . . .

264 F.3d at 236; *see also In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211

(5th Cir. 1981) ("[W]e are not compelled to hold that formal discovery was a necessary ticket to

the bargaining table. Because the plaintiffs did have access to information, this case cannot be

characterized as an instance of the unscrupulous leading the blind."); *Bowling v. Pfizer*. 143

F.R.D. 141, 161 (S.D. Ohio 1992) ("We can imagine an inadequate settlement with much

discovery done; similarly, we can envision an outstanding settlement with little discovery

done."); *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991) (plaintiffs were

sufficiently informed about the strength of the case as a result of information obtained through

informal discovery); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (approving

settlement over objection that not enough discovery had occurred because plaintiffs were

adequately informed despite fact that "very little formal discovery was conducted and that there

is no voluminous record in this case.").

      Here, Plaintiff and Class Counsel possessed sufficient information to make an appropriate

and informed evaluation of the proposed Settlement. Specifically, Counsel was aware of the

following information:

- That the card number and/or expiration date may have been published on more than
  2.5 million credit or debit card receipts presented to Defendant's customers at the
  point of sale during the relevant time period, which was approximately 5.6 percent of
  all credit or debit card receipts Defendant provided to its customers during the
  relevant time period;

- That Defendant's primary liability defense was going to be the lack of any willful violation of the Fair Credit Reporting Act, as amended by FACTA;

- That there is significant, albeit non-binding authority adverse to class certification in the FACTA context;

- That there was unlikely to be any smoking gun evidence of Defendant's willful noncompliance with FACTA's truncation requirements;

- That without evidence of malice or other indicia of malfeasance, a jury is unlikely to want to impose potentially crippling damages upon a business that is generally an upstanding corporate citizen – particularly where the parties were careful to exclude any customers who may have sustained any monetary loss due to identity theft; and,

- That if the full measure of statutory damages was actually imposed upon Defendant by a jury, said damages would run a very real risk of violating Defendant's Due Process Rights.

In short, Plaintiff and Class Counsel possessed sufficient information to conclude that not only is the proposed Settlement fair, reasonable and adequate, but it also serves the Congressional purposes reflected in FACTA. At the same time, the proposed Settlement represents a responsible resolution of this litigation in that it does not seek to cripple an otherwise responsible business.

This factor weighs in favor of approval of the proposed Settlement.

### d.   *Plaintiff Faced Considerable Risk In Establishing Liability*

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the Settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 789 F.2d 35 (2d Cir. 1986). As former Judge Ziegler noted in *Flatglass*:

> We find that, while we agree that plaintiffs present a compelling theory on which to base their claims, they have a difficult journey with each defendant steadfastly maintaining that they never agreed

to fix prices. *Accord, In re Residential Doors*, 1998 WL 151804, at
* 7. We find that 'risks and uncertainties attend any complex
litigation such as this, making it difficult, if not impossible, to
accurately predict the outcome of either trial or the inevitable
appeal.' *In re Chambers Development Securities Litigation*, 912 F.
Supp. 822, 838 (W.D. Pa. 1995).

As another court has noted, "no matter how confident one may be of the outcome of

litigation, such confidence is often misplaced." *State of West Virginia v. Chas. Pfizer & Co.*, 314

F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871

(1971); *see also Bell Atlantic Corp.*, 2 F.3d at 1313 ("Even if plaintiffs hoped to secure a large

damage award, this would have to be drastically discounted by the improbability of their success

on the merits . . . ."). In the context of this litigation, the risks that Plaintiff faces in establishing

liability are manifest, and this factor thus favors approval of the proposed Settlement.

>   **e.**     ***Plaintiff Faces Considerable Risk In Establishing A Sustainable***
>           ***Statutory Damage Award***

If Plaintiff succeeded in establishing liability, significant risks would still remain with

respect to Plaintiff's ability to prove a ***sustainable*** class-based damage award. Specifically,

statutory damages in this case range from $100 to $1,000 per transaction. There are in excess of

2.5 million transactions at issue. If liability were proven in this case, then Defendant would face

potentially annihilating class-wide statutory damage exposure. Plaintiff seriously questions

whether damages of this magnitude, against this Defendant, against the backdrop of the statutory

violation at issue, could withstand an almost certain Due Process challenge by Defendant. *State

Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

In addition, Plaintiff's ability to prove a "willful" violation of FACTA is a prerequisite to

***any*** statutory damage award. As noted above, there are no guarantees that Plaintiff would be

able to sustain this burden. *Perry v. Fleet Boston*, 299 F.R.D. at 115-116.

This factor favors approval of the proposed Settlement.

   **f.**  *The Risks Of Maintaining A Certified Class Through Trial*

   Plaintiff also faces the risk that the Court might perceive insurmountable difficulties in managing this case as a class action at trial. As required by *Amchem*, 521 U.S. 591, this Court must fully analyze whether Rule 23 has been satisfied in this case, with the exception of the manageability inquiry, which *Amchem* holds is irrelevant because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620.

   Defendant would aggressively challenge certification if the case were to be litigated, and certainly would appeal certification, should it be granted. That collateral challenge would prolong the litigation and increase the costs of adjudication and further burden the judicial system. Moreover, under Rule 23, a class may be decertified at any time during the litigation. As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits. 'To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it.'

*In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 317 (N.D. Ga. 1993) (internal citations omitted); *see also Perry v. Fleet Boston*, 229 F.R.D. at 116 ("What the district court giveth, the district court may take away: the court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable.")

   **g.**  *Defendants' Ability To Withstand A Greater Judgment*

   It does not require a forensic accounting analysis to determine that the potential damage exposure in this case would seriously impact Defendant's business viability. Therefore, this factor strongly favors the proposed settlement.

h.      *Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation*

The last two *Girsh* factors are the reasonableness of the settlement in light of (i) the best recovery, and (ii) all the attendant risks of the litigation. Courts in the Western District have had regular occasion to opine on these specific *Gircsh* factors. One of the most comprehensive analyses was set forth in *Lazy Oil, Col. V. Witco Corporation, et al.*, 95 F. Supp.2d 290, 339 (W.D. Pa. 1997), wherein Judge McLaughlin stated:

> The settlement amount here represents a percentage of Plaintiffs' experts' damages estimates that is well within the range typically approved by courts in passing on reasonableness. *See e.g., Erie Forge & Steel, Inc. v. Cyprus Minerals Co.,* Civil Action No. 94-404 (W.D. Pa. December 23, 1996) (approving settlement of $3.6 Million where plaintiffs' expert estimated damages at $33 million); *Fox v. Integra Financial Corp.,* Civil Action No. 90-1504 (W.D. Pa. July 9, 1996) (approving settlement of $6.5 million where plaintiffs' best estimate of provable damages was $33 million); *In re Four Seasons Sec. Litig.,* 58 F.R.D. 19, 36-37 (W.D. Okla. 1972) ($8 million settlement approved, although claims exceeded $100 million); *Cagan v. Anchor Savings Bank FSB,* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) 95,324 at 96,559, 1990 WL 73423 at * 12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million dollar settlement over objections that `best possible recovery would be approximately $121 million"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D.Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), *aff'd* 899 F.2d 21 (11th Cir. 1990).
>
> In light of the well-recognized risks faced by litigants in proving liability and damages in cases of this type, courts have determined that a settlement can be approved even if benefits amount to a small percentage of the recovery sought. In *Detroit v. Grinell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974), *impliedly overruled in non-relevant part by Missouri v. Jenkins,* 491 U.S. 274 (1989), the Second Circuit stated: `The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.' And, `there is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery.' 495 F.2d at 455 n.2.

Consequently, class settlements involving far smaller percentage recoveries have been approved. *See, e.g., Weinberger v. Kendrick,* 698 F.2d at 65 ($2.84 million settlement upheld which, because of legal difficulties amounted to 'only a negligible percentage of the losses suffered by the class,' which were estimated at between $250 million and $1 billion); *Fisher Bros., Inc. v. Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa. 1985) (approving settlement of 0.2% of sales; *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. at 542 (settlement of 5.7% of total damages); *Cagan v. Anchor Savings Bank FSB, supra* (settlement of $2.3 million where estimated damages were $121 million); *Mersay v. First Republic Corp. of America* [1967-1969 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,304 at 97,443 (S.D.N.Y. 1968)(5-10%); *In re Four Seasons Securities Litig.,* 58 F.R.D. at 36-37 (settlement of less than 8% of estimated damages); *Bagel Inn, Inc.* v. *All Star Dairies,* 1982-1 Trade Cases (CCH) 64,512, 1981 WL 2185 at * 3 (D.N.J. 1981) (settlement of 8% of potential damages); *Feder v. Harrington,* 58 F.R.D. 171, 176 (S.D.N.Y. 1972)(Court approved settlement of 16% of 'realistic damages').

On appeal, the Third Circuit readily endorsed this analysis, stating:

From the objectors' point of view, our opinion should be devoted largely to a merits analysis of their objections to the settlement, measured by the standards outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). **However, we dispose of that aspect of the case summarily, concluding that the *Girsh* factors are easily met and that the District Court did not abuse its discretion in approving the settlement** . . . .

*****

We note specifically that the plaintiffs faced a not insignificant risk of losing a summary judgment motion if this case was not settled; of the possible exclusion of their damage experts following a *Daubert* hearing; and of an adverse verdict if the case reached trial . . . .

166 F.3d 581, 584, 588 (3d Cir. 1999) (emphasis added).

As a court sitting in the Eastern District of Pennsylvania noted in evaluating a settlement wherein the relief being offered to the class represented a significant discount from the low end of FCRA's statutory damages provisions (*i.e.* $100 per transaction):

> The risks of litigation are particularly weighty here, on the issues of both liability and damages. Further complicating matters is the fact that "no reported class action cases have ever been brought or classes certified under the theory [used by Plaintiffs in this case]." (internal citation omitted) The Court concludes that, given the circumstances, the settlement is within the range of reasonableness in light of the attendant risks of litigation.

*Perry v. Fleet Boston*, 229 F.R.D. at 117.

The maximum potential value of the proposed Settlement is $5,000,000.00, $2,625,500.00 of which is guaranteed.  The guaranteed value is calculated by multiplying the maximum numbers of settlement vouchers available (375,000) by the $7.00 value of Tier Two settlement vouchers, which are to be distributed at Defendant's retail store locations.  The Parties have agreed that the total amount that Defendant is required to pay in connection with the proposed Settlement shall not exceed $5,000,000.00.  [Dkt. # 45-1, at 23.]

The Plaintiff respectfully suggests that the proposed Settlement is fair, reasonable and adequate and represents a responsible and appropriate compromise of this litigation.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Final Approval Order and Proposed Final Judgment, approving the proposed Settlement.

Dated:  February 27, 2014                    Respectfully submitted,

                                             CARLSON LYNCH LTD.

                                             By:  */s/ Gary F. Lynch*
                                             Gary F. Lynch
                                             glynch@carlsonlynch.com
                                             Sunshine R. Fellows
                                             sfellows@carlsonlynch.com
                                             Jamisen A. Etzel
                                             jetzel@carlsonlynch.com
                                             PNC Park, 115 Federal Street, Suite 210
                                             Pittsburgh, PA 15212
                                             (Tel.) 412-322-9243
                                             (Fax) 412-231-0246

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on this 27th day of February, 2014.

<u>*/s/ Gary F. Lynch*</u>