**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| DAWN DOVER, | ) | Case No. 2:12-cv-00694-CB-MPK |
| Individually, and on Behalf of | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHOE SHOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT**
**OF EXPENSES AND PAYMENT OF PLAINTIFF INCENTIVE AWARD**

**I.      PRELIMINARY STATEMENT**

Plaintiff, Dawn Dover ("Plaintiff" or the "Class Representative"), by and through her

undersigned counsel, hereby moves for an award of attorneys' fees, costs and a Plaintiff's

incentive payment. The fee and cost request is reasonable and appropriate under all potentially

applicable methods for evaluating attorney fee awards. Specifically, the amount of fees and costs

to be paid to Class Counsel was negotiated separate and apart from the relief negotiated on

behalf of the Class, and the payment of fees and costs by Defendant in no way diminishes the

amount of relief to be paid to the Class.  This fact entitles the Parties' fee and costs agreement to

substantial deference.  The amount of fees and costs negotiated by the Parties is also reasonable

and appropriate under the common fund doctrine. Finally, the amount of fees and costs

negotiated by the Parties is reasonable and appropriate under a lodestar analysis.

The incentive payment requested for Plaintiff is also reasonable and appropriate under

well-established authority.

## II.    __BACKGROUND__

Class Representative Dawn Dover filed the instant action on May 24, 2012.  On behalf of
herself and other putative class members, Plaintiff alleges that Defendant Shoe Show, Inc.
("Defendant" or "Shoe Show") violated the Fair and Accurate Credit Transaction Act, 15 U.S.C.
§§ 1681 *et seq.* ("FACTA").  Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. §
1681(g)(1) which provides:

> [N]o person that accepts credit cards or debit cards for the
> transaction of business shall print more than the last five digits of
> the card number or the expiration date upon any receipt provided
> to the cardholder at the point of sale of the transaction.

On August 24, 2012, the Parties filed a Stipulation Selecting ADR process, pursuant to
which they agreed to mediate the claims in dispute before attorney Arthur H. Stroyd.  An all-day
mediation with Mr. Stroyd was conducted on September 27, 2012.  The case was not resolved at
that time.  Settlement discussions continued, however, and a subsequent full day mediation was
conducted on August 27, 2013.[1]  The Parties agreed to the basic terms of a Class Settlement at
that time, and the Parties ultimately executed a Stipulation and Agreement of Class Action
Settlement ("Settlement Agreement") on or about October 21, 2013.[2]

Pursuant to this agreement, the Parties have agreed to certification, for settlement
purposes only, of the following Class:

---

[1] Between September 27, 2012 and August 27, 2013, the Parties litigated Defendant's Motion to Dismiss, in which
Defendant argued that Plaintiff's allegations concerning Defendant's willful noncompliance with the requirements
of FACTA were legally insufficient.  On or about March 19, 2013, Magistrate Judge Maureen P. Kelly issued a
Report and Recommendation denying Defendant's Motion.  Defendant filed its Objections to the Report and
Recommendation on or about April 5, 2013, and by Order dated April 23, 2013, District Judge Cathy Bissoon
adopted Magistrate Judge Kelly's Report and Recommendation as the Opinion of the District Court.  Defendant later
filed a Motion for Certification for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b), which was denied by the
Court on or about May 7, 2013.  Thereafter, Defendant answered Plaintiff's Complaint.  The Parties then engaged in
written discovery.

[2] A copy of the Settlement Agreement was appended to Plaintiff's Unopposed Motion for Preliminary Approval
[Dkt. # 45] as Exhibit 1.  [Dkt. # 45-1.]

> All Consumers to whom Shoe Show provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring anytime from June 3, 2008 through August 27, 2013 on which Shoe Show printed (1) more than the last five digits of the person credit card or debit card number, and/or, (2) the expiration date of the person's credit card or debit card number. Excluded from the class is any Consumer who has suffered identity theft as a result of any Shoe Show Violation.

Plaintiff filed her unopposed motion for preliminary approval of class action settlement on or about October 23, 2013. [Dkt. # 45.] By Order dated October 25, 2013, this Honorable Court granted preliminary approval of the Parties' proposed class action settlement.

## III.   TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

Settlement Class Members may submit a claim for a voucher redeemable for $35 of merchandise at any Shoe Show retail location ("Tier One Voucher").[3] To be eligible to receive a Tier One Voucher, a Settlement Class Member must submit a claim form, including a non-compliant receipt, to the Settlement Administrator. Settlement class members have until 90 days after the Effective Date to submit a claim for a Tier One Voucher. The Settlement Administrator shall determine whether the Settlement Class Member has submitted a potentially valid claim. Within 180 days after the Effective Date, the Settlement Administrator will prepare and mail one Tier One Voucher to each Tier One Voucher Recipient to the address provided on that individual's claim form.

---

[3] The Parties have agreed that Tier One Vouchers (i) shall be fully transferrable, (ii) shall not be subject to an expiration date, (iii) shall be limited to one per customer, (iv) may be used on only one item and may not be used to purchase multiple items, (v) may only be redeemed in a Shoe Show Retail Location, (vi) may not be redeemed, in whole or in part, for cash, (vii) may not be used to obtain a refund or discount if the entire face amount of the voucher is not used in a single transaction, (viii) may not be applied to a prior purchase, (ix) may not be applied to the purchase of a gift card, and (x) subject to the foregoing provisions, shall not require any minimum purchase amount to redeem. Settlement Agreement, at 11 ¶ 49. [Dkt. # 45-1.]

Thereafter, Defendant will prepare and distribute vouchers redeemable for $7 of merchandise at any Shoe Show Retail Location ("Tier Two Vouchers").[4]  Tier Two Vouchers will be distributed at specific Shoe Show retail stores on a first-come, first-served basis to consumers making a purchase using a credit card or debit card.  The total aggregate number of Tier One Vouchers and Tier Two Vouchers distributed by Defendant is not to exceed 375,000.

Defendant has agreed to pay the cost of notice and claims administration.  Further, Defendant has agreed to pay Class Counsels' attorneys' fees and allowable litigation costs and expenses in an amount not to exceed $500,000.00, subject to Court approval.  In addition, Defendant has agreed to pay Plaintiff a Settlement Class Representative Award in an amount not to exceed $2,500.00, subject to Court approval.

## IV.   <u>LEGAL ANALYSIS</u>

### A.   <u>The Fee and Costs Agreement Reached By Counsel For The Parties Was Negotiated Independently From, And In Addition To, Class Relief And Is Thus Entitled To Significant Deference</u>

The Parties negotiated fees and costs separately from Class relief – after agreement regarding Class relief was reached.  Because the fee negotiation was premised upon the condition that the fee would be in addition to and separate from any amounts that would be applied to fund the Class relief, the fee agreement reached by the Parties is entitled to substantial deference.  Another Judge on this Court discussed this issue as follows:

> Moreover, the parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees awarded in similar situations.

---

[4] The Parties have agreed that Tier Two Vouchers (i) shall be fully transferrable, (ii) shall not be subject to an expiration date, (iii) shall be limited to one per customer, (iv) may be used on only one item and may not be used to purchase multiple items, (v) maybe only be redeemed in a Shoe Show Retail Location, (vi) may not be redeemed, in whole or in part, for cash, and (vii) may not be used to obtain a refund or discount if the entire face amount of the voucher is not used in a single transaction, (viii) may not be applied to a prior purchase, (ix) may not be applied to the purchase of a gift card, (x) may not be redeemed until after two full days have elapsed since the Distribution Date, and (ix) subject to the foregoing provisions, shall not require any minimum purchase amount to redeem. Settlement Agreement, at 11 ¶ 51. [Dkt. # 45-1.]

Plaintiffs' counsel negotiated with their adversaries, who saw the effort made by plaintiffs' counsel first hand, knew plaintiffs' counsels' lodestar in the case and were well aware of how much time was reasonably required to prosecute this case. Weiss/Specter Decl. at ¶ 162. Counsel for Metlife had an interest in protecting Metlife's treasury and Metlife had a direct financial interest in the amount of the fee. Counsel for Metlife are lawyers who have litigated from the defense side for many years and know the applicable law pertaining to fee awards, including *Prudential II*, and were able to consider and utilize as precedent fee decisions from other action of a similar nature. In such circumstances, the end result of those negotiations – which reflects both sides' experience as to what is appropriate – is entitled to a great deal of weight in ruling on the fee request.

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), for example, the Supreme Court held that negotiated, agreed-upon attorneys' fee arrangements, such as the one here, are the 'ideal' toward which the parties should strive: 'a request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.' *See also, Matter of Continental Ill. Sec. Litigat.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fee).

*    *    *    *

The Court's role in the present context is substantially different from that in the traditional 'common fund' case, in which the awarded fee is subtracted from the total amount of money and/or benefits made available to the class, thereby diminishing those benefits. Here, plaintiffs' counsel's fee will not affect the Class recovery. This case is also very different from a 'statutory fee shifting' case, in which the defendant has not agreed to pay plaintiffs' counsels' fees and thus reserves the right to challenge every item of work performed that underlies the requested fee. Here, Metlife has agreed to pay the amount of fees sought by plaintiffs' counsel. Because Metlife has agreed to pay plaintiffs' counsels' fees and to reimburse counsels' expenses (up to $2.5 million) wholly apart from any award to the Class, and because the nature of the negotiations demonstrates that this fee was not 'traded off' for a lesser result for the Class, the Court need not 'award' the fee as if it were being paid out of the Class recovery or being challenged item by item by the defendant. Rather, the Court need only approve the overall settlement package – including its fee and expense provisions – as fair, reasonable, and adequate. *See, e.g., Officers for Justice v. Civil Services Com'n. of City and*

5

*County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. Lexis 15488, at *12-13 (S.D.Ca. Aug. 30, 1990).  (*See* Compendium of Unreported Authority – Fees at Exhibit 1.)

Particularly because the fees were negotiated after the Settlement was negotiated, there is no reason for this Court to second-guess whether Metlife, a sophisticated insurance company with experienced and competent counsel not needing the Court's protection, may have underpaid or overpaid in negotiating its exposure to fees and expenses.  The only consequence of such second-guessing would be a windfall to Metlife and no further benefit to the Class.   Moreover, such second- guessing is completely unwarranted in this case where, as shown below, the requested fee is not excessive in comparison to other similar cases…and the uncontested Affidavits of plaintiffs' counsel showing the amount of time, effort and expenses justify the amount of agreed to fees and expenses.[5]

Consistent with the analysis in *MetLife*, Plaintiff respectfully requests that the Court endorse the agreement regarding counsel fees and costs that was negotiated by experienced counsel, and mediated by an experienced third party neutral.

B.    **Western District Common Fund Authority**

If the proposed Settlement is analyzed under a traditional "common fund" analysis, there is substantial authority from the Western District which supports the propriety of the amount of fees and costs negotiated by the Parties in this case.  As noted in the Motion accompanying this Memorandum, the requested fees and costs in the amount of $500,000.00 represents 10 percent of the maximum potential value of the proposed settlement.[6]  This is well below the fee percentage historically approved in class actions by courts sitting in the Western District.  Some examples follow:[7]

---

[5] *See MetLife* Findings of Fact and Conclusions of Law Concerning the Award of Attorneys' Fees, Expenses and Incentive Awards, attached to Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Plaintiff Incentive Award ("Fee Motion") as Exhibit 2.

[6] See Fee Motion at ¶ 7.

[7] Excluded from this sampling are "mega-fund" cases like *MetLife, supra.*, which are arguably governed by a

| **Case Name** | **Fee As A Percent Of Recovery** |
|---|---|
| *In re:  Westinghouse Securities Litigation,* C.A. Nos. 91-354, 97-309, 97-960[8] | 33.3% |
| *DiCicco v. American Eagle Outfitters, Inc.,* C.A. No. 95-1937[9] | 33.3% |
| *In re:  Crown American Realty Trust Securities Litigation,* C.A. 95-202J[10] | 33.3% |
| *In re:  USX Corporation, Steel Stock Securities Litigation,* C.A. 93-1246[11] | 30% |
| *In re:  Sulcus Computer Corporation Securities Litigation,* C.A. 92-1165 (*"Sulcus I"*)[12] | 33% |
| *In re:  Sulcus Computer Corporation Securities Litigation,* C.A. 94-0565 (*"Sulcus II"*)[13] | 30% |
| *In re:  PNC Securities Litigation,* C.A. 90-592[14] | 33% |
| *Schmitzer v. The Italian Oven, Inc. et al.,* 96-1248[15] | 30% |
| *In re:  Blue Cross of Western Pennsylvania[16] Litigation,* 93-1591 | 30% |

---

different fee analysis. *See, In re Chambers Development Securities Litigation*, 912 F.Supp. 852 (W.D. Pa. 1995)("In the normal range of common fund recoveries in securities and antitrust suits, common fund fee awards fall in the 20 to 30 percent range. This fee percentage would often be higher on a proportional basis for modest recoveries because of the larger ratio of hours to recovery amount that would likely be involved. On the other hand, the fee percentage would be significantly more modest as the common fund recovery begins to reach recoveries approaching or exceeding $100 million, based on the notion that the effort necessary to achieve recovery dollars at the high end was less onerous, on a sliding scale, than the effort expended for recovering the threshold sums by the judgment or settlement.") *citing Newberg on Class Actions*, § 14.03, at 14-13-14-14.

[8] A copy of the *Westinghouse Securities* opinion is attached to the Fee Motion as Exhibit 3.

[9] A copy of the *American Eagle* opinion is attached to the Fee Motion as Exhibit 4.

[10] A copy of the *Crown American Realty* opinion is attached to the Fee Motion as Exhibit 5

[11] A copy of the *USX Securities Litigation* opinion is attached to the Fee Motion as Exhibit 6.

[12] A copy of *Sulcus I* is attached to the Fee Motion as Exhibit 7.

[13] A copy of *Sulcus II* is attached to the Fee Motion as Exhibit 8.

[14] A copy of the *PNC Securities Litigation* opinion is attached to the Fee Motion as Exhibit 9.

[15] A copy of the *Italian Oven* opinion is attached to the Fee Motion as Exhibit 10.

[16] A copy of the *Blue Cross* opinion is attached to the Fee Motion as Exhibit 11.

If the negotiated fee and expense amount is evaluated as a percentage of the recovery made available to the Class, it falls significantly below the range of fees historically approved by courts sitting in this district.

Common fund jurisprudence within the Third Circuit teaches that seven factors should be considered by a district court that is applying a percentage of recovery analysis to confirm the propriety of a given fee award:  (1)  the amount of the value created and the number of persons benefited;  (2)  the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;  (3) the skill and efficiency of the attorneys involved;  (4)  the complexity and duration of the litigation;  (5)  the risk of nonpayment;  (6)  the amount of time devoted to the case by plaintiff's counsel; and, (7)  awards in similar cases. *See In re Cendent Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001) (citing *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

The amount of value created and the number of persons benefited supports the fee request.  Those Class Members who care to participate in the settlement and return claims forms will receive an appropriate and valuable benefit, for free.  In fact, smaller funds logically support a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys.  *See In re Prudential Sales Practices Litigation,* 148 F.3d 283, 339 (noting "inverse relationship" of large settlement to a smaller percentage award).  Given the settlement value conferred here, a fee and cost award of 10 percent of the maximum potential value of the Settlement is well below the norm.

There have been no objections to Class Counsels' fee request. The second factor, therefore, weighs in favor of Class Counsels' fee request.

The third factor, counsels' skill and efficiency, supports approval.  The quality of

representation is measured by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  Here, Plaintiff's counsel pursued a case articulating a theory of class recovery calculated to circumvent significant adverse authority created in other similar cases.  Counsel have been able to achieve a fairly rapid and efficient resolution of the Class' claims.  Counsel have substantial experience in consumer class litigation, as demonstrated by the Declaration of Counsel appended to the Fee Motion.  Counsel have been routinely approved as class counsel in consumer and employment class litigation, by Courts in the Western District and elsewhere.[17]

The fourth factor also supports approval.  While the litigation has not been of long duration, counsel have had to expend a substantial amount of time not only in this case, but in similar cases, to best position the legal theories being prosecuted for a successful outcome.  The complexity here derives primarily from the necessity of navigating significant adverse authority generated in other similar cases.

The fifth factor, risk of nonpayment, is neutral.

The sixth factor is the amount of time devoted to the case by Plaintiff's counsel. Although the proposed settlement of this case was achieved less than a year and a half after the case was filed, Plaintiff's counsel has a total of 609.5 hours logged in this case.[18]  Plaintiff's counsel has attempted to achieve a fair and efficient result without overreaching.  Therefore, Plaintiff submits that this factor supports approval.

When considering the seventh factor, "awards in similar cases," a court should look to

---

[17] *See* Lynch Declaration, attached as Exhibit 1 to the Fee Motion.
[18] *Id.*

awards in cases of similar size, and not necessarily similar subject matter. *See Cendent PRIDES*, 243 F.3d at 737.

In this case, Plaintiff requests attorneys' fees and costs in the amount of $500,000.00. The fee and cost payment of $500,000 is 10 percent of the potential $5,000,000.00 maximum value achieved for the Class.

Applying all of these factors, Plaintiff submits that the fee request is reasonable and appropriate.

C.      **A Lodestar Analysis Confirms That The Fee Requested Is Reasonable**

The lodestar and expenses for counsel here, as described in counsel's Declaration, is $252,919.50, reflecting 609.5 hours of attorney and paralegal time, and costs of $6,019.50.

Lodestar is derived by first multiplying the hours expended on the engagement by current hourly rates. *See, e.g. GM Trucks*, 55 F.3d 768, 819 n.37 (3d Cir. 1995); *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). In computing the lodestar, the hourly billing rate to be applied is the market value of such time, *i.e.*, the hourly rate that normally is charged in the community where counsel who initiated and prosecuted the action practice for cases of the type at issue. *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 590-91 (3d Cir. 1984).

In using the lodestar/multiplier approach, lodestar is typically only the starting point. The Court should adjust the lodestar upward (apply a "multiplier") to take into account such factors as (i) the contingent nature of the fee and consequent risk of non-payment; (ii) the risk of the case; (iii) the quality of representation; (iv) the result achieved; and, (v) the standing of counsel. *In re Fine Paper Antitruse Litig.*, 751 F.2d at 583-84. In adjusting the lodestar, courts have also taken into account such matters as the need to encourage experienced and able private

counsel to undertake such litigation. *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 750-751 (S.D.N.Y. 1985).

### 1.   Hourly Rates

The hourly rates for Plaintiff's counsel are well within the range of what is reasonable and appropriate in this market.  *See* Declaration of Class Counsel attached to Fee Motion as Exhibit 1.  The hourly rates are within the range charged by attorneys with comparable experience levels for consumer/employment class action litigation of a similar nature.

### 2.   Hours Expended

In support of this Motion, Plaintiff has submitted a spread sheet delineating the time expended by Class Counsel to prosecute this litigation, broken down by attorney or paralegal, hourly billing rate, and general category of work performed.[19]  There was not time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  All time billed was reasonably necessary to achieve the successful outcome achieved for Plaintiff and the Class in this case.

Plaintiff respectfully submits that a fee and cost award of $500,000.00 is wholly appropriate in this case.  *See*, *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005)(approving multiplier of 1.5 in connection with a settlement under the Fair Credit Reporting Act).

### D.      The Requested Plaintiff's Incentive Award Is Reasonable And Appropriate

As set forth in the Class Notice, Defendant has agreed to pay an incentive payment of $2,500.00 to Plaintiff.  This payment is warranted as a matter of public policy and is well supported by applicable authority.  *See, e.g., In re Chambers Development Securities Ligit.*, 912

---

[19] Class Counsel maintains detailed contemporaneous time records which support the summary set forth in the spread sheet attached to Class Counsel's Declaration.

F.Supp. 852, 863 (W.D. Pa. 1995)(approving incentive payment of $2,500 to each plaintiff); *In re GNC Shareholder Litig.*, 668 F.Supp. 450, 451 (W.D. Pa. 1987)(approving incentive payment of $3,000 to each plaintiff).

**V.      CONCLUSION**

For all of these reasons, Plaintiff respectfully requests that the Court approve the fee and costs agreement negotiated by the Parties, as well as the negotiated incentive payment for Plaintiff.

Dated:  February 27, 2014                              Respectfully submitted,

CARLSON LYNCH LTD.

By: */s/ Gary F. Lynch*
Gary F. Lynch
glynch@carlsonlynch.com
Sunshine R. Fellows
sfellows@carlsonlynch.com
Jamisen A. Etzel
jetzel@carlsonlynch.com
PNC Park, 115 Federal Street, Suite 210
Pittsburgh, PA 15212
(Tel.) 412-322-9243
(Fax) 412-231-0246

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on this 27th day of February, 2014.

/s/ Gary F. Lynch